# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

I MARK MARKETING SERVICES, LLC,

    Plaintiff,

    v.

GEOPLAST, S.p.A.,

    Defendant.

Civil Action No. 10–347 (CKK)

## MEMORANDUM OPINION
(December 6, 2010)

Plaintiff I Mark Marketing Services, LLC ("IMARK") filed the above-captioned action against Defendant Geoplast S.p.A. ("Geoplast S.p.A.") pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. IMARK asserts claims against Geoplast S.p.A. for breach of contract, unjust enrichment, *quantum meruit*, and tortious interference with an economic relationship. Presently before the Court is Geoplast S.p.A.'s [10] Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ("Def.'s Mot."). For the reasons set forth below, the Court shall (1) DENY Geoplast S.p.A.'s motion to dismiss for lack of personal jurisdiction because IMARK has alleged sufficient facts to both confer jurisdiction under the District of Columbia's long-arm statute and comport with due process; and (2) GRANT Geoplast S.p.A.'s motion to dismiss IMARK's tortious interference claim because IMARK has failed to state a claim upon which relief can be granted.

## I. BACKGROUND

Geoplast S.p.A., an Italian corporation headquartered in Padova, Italy, is a plastics manufacturer that specializes in construction-related products. Compl. ¶¶ 2, 6. IMARK is a

marketing company organized as a Delaware limited liability company with its principal place of business in the District of Columbia ("District"). *Id.* ¶¶ 2, 5. In Italy, IMARK and Geoplast S.p.A. negotiated and, on February 5, 2009, entered into a two-year contract ("Contract"). *Id.* ¶¶ 7, 10; Def.'s Mot., Ex. B (Affidavit of Mirco Pegoraro (hereinafter, "Pegoraro Decl.")), ¶¶ 4-5.[1] Pursuant to the Contract, IMARK agreed to assist Geoplast S.p.A. in expanding into the U.S. market. *See* Compl. ¶ 7; *id.*, Ex. A (Contract in the original Italian); *id.*, Ex. B (Contract Translated into English).[2] To accomplish Geoplast S.p.A.'s expansion, the Contract enumerates several tasks IMARK would undertake, including developing a marketing plan, establishing business relationships with U.S. entities on Geoplast S.p.A.'s behalf, and "establishing [Geoplast U.S.], subsidiary of [Geoplast S.p.A.], in Washington [D.C.], with legal business addressed at IMARK headquarters." *See id.* ¶¶ 7, 16; *id.*, Ex. B, at 2. Geoplast S.p.A., in turn, granted IMARK the exclusive right to market its goods in the United States and agreed to pay IMARK both a monthly fee of $10,000 and commissions, pursuant to a schedule set forth in the Contract, for any contracts IMARK secured on its behalf. *See id.* ¶¶ 8, 12-15; *id.*, Ex. B.

As contemplated by the Contract, on February 20, 2009, Geoplast S.p.A.'s managing director, Mirco Pegoraro, directed Roberta Marcenaro, IMARK's vice president, to form a wholly-owned U.S. subsidiary of Geoplast S.p.A. (hereinafter, "Geoplast U.S.") with the

---

[1] Although Geoplast entitles Exhibit B an affidavit, the exhibit complies with 28 U.S.C. § 1746(1) and is not notarized. Therefore, it is properly considered a declaration.

[2] IMARK claims that a certified English translation of the Contract is attached as Exhibit B to the Complaint. Compl. ¶ 7. IMARK, however, has not in fact provided a certificate attesting to who translated the original Contract and that the translation is accurate. Nevertheless, as Geoplast S.p.A. has not contested the contents of the English translation, the Court shall assume for purposes of the pending motion that Exhibit B does contain an accurate English translation of the Contract.

necessary licenses to conduct business in the District. Pl.'s Opp'n to Def.'s Mot. to Dismiss

("Pl.'s Opp'n"), Ex. 1 (Decl. of Roberta Marcenaro (hereinafter, "Marcenaro Decl.")) ¶¶ 3, 5, 7.

Geoplast U.S. was incorporated in Delaware on March 4, 2009, with Geoplast S.p.A.'s managing

director, Mr. Pegoraro, as Geoplast U.S.'s president and sole director. Pl.'s Opp'n Ex. 2 (Decl.

of Pietro Raugi (hereinafter, "Raugi Decl.")) ¶¶ 15-16; *see also id.*, Ex. B (Statement of Geoplast

U.S.'s Sole Incorporator). Mr. Raugi, IMARK's president, served as Geoplast U.S.'s vice

president and Ms. Marcenaro, IMARK's vice-president, served as Geoplast U.S.'s secretary and

treasurer. Raugi Decl. ¶ 2; *id.*, Ex. E (Geoplast U.S.'s Application with the D.C. Dep't of

Consumer & Regulatory Affairs (hereinafter, "DCRA Application")); Marcenaro Decl. ¶ 3.

Geoplast U.S. issued a total of one hundred shares of stock, all of which were issued to Geoplast

S.p.A. Raugi Decl. ¶ 18; *id.* Ex. C (Geoplast U.S.'s Written Consent of the Sole Director in Lieu

of the Org. Meeting), at 2. On March 11, 2009, Geoplast U.S. submitted its application to the

D.C. Department of Consumer and Regulatory Affairs ("DCRA") in order to qualify to conduct

business within the District. *Id.*, Ex. E (DCRA Application). Although Geoplast U.S.'s license

to do business in the District appears to have been revoked in September 2009, there is no

indication that Geoplast U.S. has dissolved.[3] *See* Def.'s Reply to Pl.'s Opp'n to the Rule 12(b)

Mot. to Dismiss ("Def.'s Reply") at 6 & 6 n.1.

Geoplast U.S.'s sole purpose, according to Mr. Raugi, is to function as a conduit for

Geoplast S.p.A.'s products to enter the U.S. market. Raugi Decl. ¶ 11. Geoplast S.p.A. paid the

legal costs associated with Geoplast U.S.'s incorporation. *Id.* ¶¶ 12-14. In addition, Geoplast

U.S. does not maintain its own bank account, as Geoplast S.p.A. pays Geoplast U.S.'s expenses

---

[3] Although Geoplast U.S. appears to have ceased operations, as Geoplast U.S. has not dissolved, the Court shall refer to Geoplast U.S. in the present tense.

and provides all of Geoplast U.S.'s assets. *Id.* ¶¶ 19, 25.[4] Geoplast U.S.'s website, which is maintained by Geoplast S.p.A. and was once simply an English translation of Geoplast S.p.A.'s website, allows customers to download brochures and pamphlets regarding Geoplast S.p.A.'s products. *Id.* ¶¶ 28, 31. These promotional materials group Geoplast S.p.A. and Geoplast U.S. under the heading of "Geoplast International," with headquarters listed as Geoplast S.p.A.'s address in Italy and with a North American location listed as Geoplast U.S.'s address in the District.[5] *See, e.g.*, Marcenaro Decl., Ex. C (Tank Elevator and Modulo System Brochures), at 8, 22. According to these materials, and the business cards Geoplast S.p.A. provided Mr. Raugi and Ms. Marcenaro as officers of Geoplast U.S., Geoplast U.S.'s principal place of business is the same as IMARK's office—1054 31st Street NW, Suite 200, in Washington, D.C. *See* Raugi Decl. ¶¶ 21-22; *id.* Ex. D (Ms. Marcenaro's Geoplast U.S. business card); *id.* Ex. G (Freezer Warehouse Brochure); Marcenaro Decl., Ex. C, at 8, 22.

For approximately a year, Geoplast S.p.A. and IMARK operated under the Contract without incident. Geoplast S.p.A. sent monthly payments to IMARK's bank account located at 1400 G Street, N.W. in Washington D.C. ¶ 8. In addition, between March 2009 and July 2009, IMARK received at its D.C. office 127 emails from Geoplast S.p.A. employees. *Id.* ¶ 34; *see also id.* ¶ 7 (alleging that IMARK also received "numerous phone calls" from Geoplast S.p.A.'s managing director and sales manager between 2009 and early 2010).

---

[4] In January 2010, approximately nine months after Geoplast U.S. was incorporated, Geoplast U.S.'s director Mr. Pegoraro asked Ms. Marcenaro to open a bank account for Geoplast U.S. Raugi Decl. ¶ 35. For reasons unknown, the account was never opened. *See id.*

[5] There is no indication in the record that "Geoplast International" is an entity distinct from Geoplast S.p.A. "Geoplast International" is not a term used in the parties' briefing; rather, it is found in the promotional material submitted by IMARK as exhibits to its opposition. *See, e.g.*, Marcenaro Decl., Ex. C (Tank Elevator and Modulo System Brochures), at 8, 22.

On February 4, 2010, for reasons unclear from the present record, Geoplast S.p.A. sent IMARK what IMARK characterizes as a "new" contract to govern the parties' relationship. Compl. ¶ 25. IMARK refused to enter into this "new" contract or otherwise modify the parties' existing Contract. *Id.* ¶ 26. Subsequently, Geoplast S.p.A. ceased making its monthly payments to IMARK and then, on March 2, 2010, informed IMARK that Geoplast S.p.A. had canceled the Contract. *Id.* ¶¶ 27-28.

IMARK avers that prior to receiving Geoplast S.p.A.'s cancellation notice, it had expended significant time and incurred substantial costs to meet its contractual obligations. *Id.* ¶ 18. Specifically, IMARK claims it expended resources in identifying potential buyers for Geoplast S.p.A., as well as hiring and training a representative to market Geoplast S.p.A.'s products in the United States. *Id.* ¶¶ 19-20. IMARK further alleges that after incurring these expenses, Geoplast S.p.A. then attempted to hire "key personnel" away from IMARK in order to circumvent Geoplast S.p.A.'s contractual obligations. *Id.* ¶¶ 21-22. IMARK also claims that Geoplast S.p.A. violated IMARK's right under the Contract to be Geoplast S.p.A.'s exclusive supplier in the United States by directly contacting those business "IMARK had cultivated business relationships with" in order to sell its products without IMARK as an intermediary. *See id.* ¶¶ 23-24.

On March 4, 2010, two days after Geoplast S.p.A. informed IMARK that it had canceled the Contract, IMARK filed the Complaint in this case. IMARK asserts four claims against Geoplast S.p.A.: (1) breach of contract (Count I); (2) unjust enrichment (Count II); (3) *quantum meruit* (Count III); and (4) tortious interference with an economic relationship (Count IV). Compl. ¶¶ 31-51. On May 4, 2010, Geoplast S.p.A. responded by filing its [10] Motion to

Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) ("Def.'s Mot."). In its motion, Geoplast S.p.A. argues that all of IMARK's claims should be dismissed because this Court lacks personal jurisdiction over Geoplast S.p.A. and, in the alternative, IMARK's tortious interference claim (Count IV) should be dismissed for failure to state a claim. In support of its motion, Geoplast S.p.A. attached a declaration from Mr. Pegoraro, Geoplast S.p.A.'s managing director. *See* Def.'s Mot., Ex. B. IMARK subsequently filed its [11] Opposition to Geoplast's Motion to Dismiss ("Pl.'s Opp'n"), which includes declarations from Mr. Raugi, IMARK's president, Pl.'s Opp'n, Ex. 2, and Ms. Marcenaro, IMARK's vice-president, *id.*, Ex. 1, as well as numerous exhibits. Finally, Geoplast S.p.A. filed its [12] reply ("Def.'s Reply"). The parties' briefing on the pending motion is now complete, and the matter is therefore ripe for review and resolution by this Court.

## II. LEGAL STANDARD

### A. *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)*

A plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). "The plaintiff, however, cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998); *see also Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (same). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather she may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise

obtain.' " *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)) (alteration in original). When determining whether personal jurisdiction exists over a defendant, the Court need not treat all of a plaintiff's allegations as true. Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (internal quotation marks and citation omitted). Any factual discrepancies with regard to the existence of personal jurisdiction, however, must be resolved in favor of the plaintiff. *See Crane*, 894 F.2d at 456.

B.       *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Empl. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.") (internal quotation marks omitted). However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment."), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002).

## III.  DISCUSSION

Geoplast S.p.A. has filed motions to dismiss pursuant to both Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim.  Generally, courts must

evaluate a motion to dismiss for lack of personal jurisdiction prior to considering a motion to dismiss for failure to state a claim. *See, e.g.*, *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 40 (1st Cir. 1991) ("[C]ourts should ordinarily satisfy jurisdictional concerns before addressing the merits of a civil action."); *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989) (finding the district court's decision to first address defendants' Rule 12(b)(6) motion "awkward[]" and that the "proper course of review" required defendants' Rule 12(b)(2) motion to be considered first). This "rule is not mechanically to be applied." *Feinstein*, 942 F.2d at 40. However:

> Not only does logic compel initial consideration of the issue of jurisdiction over the defendant – a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim – but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdictional and venue questions first. A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted can be granted with prejudice.

*Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). Accordingly, the Court shall first address Geoplast S.p.A.'s motion to dismiss pursuant to Rule 12(b)(2) and then its motion to dismiss under Rule 12(b)(6). For the reasons set forth below, the Court shall deny Geoplast S.p.A.'s motion to dismiss for lack of personal jurisdiction and grant Geoplast S.p.A.'s motion to dismiss IMARK's tortious interference claim (Count IV) for failure to state a claim.

A.      *Personal Jurisdiction*

IMARK has the burden of establishing personal jurisdiction over Geoplast S.p.A. *Crane*, 894 F.2d at 456. In attempting to meet this burden, IMARK first argues that both Geoplast S.p.A.'s and Geoplast U.S.'s contacts with the District should be considered, as Geoplast S.p.A. operated such control over Geoplast U.S. that the two entities actually operated as a single entity. *See* Pl.'s Opp'n at 6-9. IMARK then argues that Geoplast S.p.A.'s and Geoplast U.S.'s

collective contacts with the District justify the exercise of personal jurisdiction over Geoplast

S.p.A. *See id.* at 9-13. For the reasons set forth below, the Court concludes that Geoplast U.S.

and Geoplast S.p.A. are alter egos and that their collective contacts warrant this Court exercising

personal jurisdiction over Geoplast S.p.A.

1.    <u>Geoplast S.p.A. and Geoplast U.S. are Alter Egos</u>

"Ordinarily, a defendant corporation's contacts with a forum may not be attributed to . . .

affiliated corporations. An exception exists, however, where affiliated parties are 'alter egos' of

a corporation over which the Court has personal jurisdiction; in that case the corporation's

contacts may be attributed to the affiliated party for jurisdictional purposes." *Diamond Chem.*

*Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 7 (D.D.C. 2003) (quoting *Shapiro, Lifschitz &*

*Schram v. Hazard* ("*Hazard I*"), 24 F. Supp. 2d 66, 70 (D.D.C. 1998)). To establish that

Geoplast S.p.A. and Geoplast U.S. are alter egos, IMARK must satisfy a two-prong test:

> (1)    Is there a unity of interest and ownership between Geoplast S.p.A. and Geoplast U.S. such that their separate corporate personalities no longer exist?; and

> (2)    If the acts are treated as only Geoplast U.S.'s, will an inequitable result occur?

*Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982); *see also Shapiro, Lifschitz &*

*Schram v. Hazard* ("*Hazard II*"), 90 F. Supp. 2d 15, 23 n.6 (D.D.C. 2000) ("Although this test

generally is used to reach an individual behind a corporation, this same test has been applied to

pierce the corporate veil between two corporations, such as between a parent-subsidiary

corporations."). Whether IMARK satisfies this test is a question of law. *See Johnson-Tanner v.*

*First Cash Fin. Servs., Inc.*, 239 F. Supp. 2d 34, 38 (D.D.C. 2003). The Court shall address each

prong in turn.

a.      Unity of Interest and Ownership

To justify piercing the corporate veil between a parent and a subsidiary, the parent's

control of the subsidiary must be "active and substantial, but it need not be exclusive in a

hypertechnical or day-to-day sense." *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.

Supp. 2d 13, 20 (D.D.C. 1999) (quoting *Valley Fin., Inc. v. United States*, 629 F.2d 162, 172

(D.C. Cir. 1980)).  The variety of factual circumstances in which piercing the corporate veil

arises precludes a rigid standard of what constitutes "active and substantial" control.  *See id.*

(citing *Valley Fin.*, 629 F.2d at 172).  Nevertheless, the D.C. Circuit has instructed courts to

consider the following factors: (1) the nature of the corporate ownership and control; (2) failure

to maintain corporate minutes or adequate records; (3) failure to maintain the corporate

formalities; (4) a commingling of funds and other assets; (5) diversion of corporate funds or

assets to other uses; and (6) use of the same office or business location.  *Labadie Coal*, 672 F.2d

at 97-99; *see also id.* at 96 ("[F]ormalities are [] an excellent litmus of the extent to which the

individuals involved actually view the corporation as a separate being.").[6]  "It is clearly not

necessary that all of these factors be present in a given case to justify piercing the veil." *Labadie

Coal Co.*, 672 F.2d at 97.  Moreover, as "piercing the corporate veil is a doctrine of equity, 'the

---

[6] To determine whether Geoplast S.p.A. and Geoplast U.S. are alter egos, IMARK argues
that this Court should utilize a series of factors identified in *Chrysler Corp. v. Gen. Motors
Corp.*, 589 F. Supp. 1182, 1200-01 (D.D.C. 1984).  The Court disagrees.  IMARK "has confused
the legal inquiry for service of process and venue under Section 12 of the Clayton Act with the []
jurisdiction analysis under District of Columbia law." *Diamond Chem.*, 268 F. Supp. 2d at 8.
The factors identified by the *Chrysler* court pertain to "the piercing of the corporate veil for
Clayton Act purposes" and, although there are some similarities between these factors and those
identified in the text above, the Court shall not commingle these distinct doctrines.  *Id.* at 7 n.4;
*see also id.* at 8 (concluding that jurisdiction under Section 12 of the Clayton Act and District of
Columbia law "requires a separate analysis and the Court declines to consider precedent
construing one when applying the other").

factor that predominates will vary in each case . . . .' " *Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 249 (D.C. 1993) (quoting *Vuitch v. Furr*, 482 A.2d 811, 815-16 (D.C. 1984)).

In this case, IMARK argues that Geoplast S.p.A. and Geoplast U.S. are alter egos because: (1) Geoplast U.S. is a wholly-owned subsidiary of Geoplast S.p.A.; (2) Geoplast S.p.A. represents to potential clients that Geoplast U.S. is its U.S. branch; (3) Geoplast S.p.A. and Geoplast U.S. use identical logos and trademarks; (4) for a time, Geoplast U.S. and Geoplast S.p.A. shared website content; (5) Geoplast S.p.A.'s managing director, Mr. Pegoraro, is Geoplast U.S.'s president and sole director; and (6) Geoplast U.S. does not maintain a separate bank account and Geoplast S.p.A. pays Geoplast U.S.'s expenses. Pl.'s Opp'n at 6-8. In its reply, Geoplast S.p.A. generally denies IMARK's aforementioned allegations, but does not respond to them individually or offer evidence to contradict them. *See* Def.'s Reply at 7. Moreover, Geoplast S.p.A. does not contest IMARK's argument that Geoplast S.p.A. and Geoplast U.S. are alter egos. *See* Def.'s Reply at 2-3.[7] For the reasons set forth below, the Court concludes that Geoplast S.p.A. demonstrated "active and substantial" control over Geoplast U.S., such that the two entities had a unity of interest and control. *Material Supply Int'l*, 62 F. Supp. 2d at 20 (quoting *Valley Fin.*, 629 F.2d at 172).

First, although the fact that Geoplast U.S. is a wholly-owned subsidiary of Geoplast S.p.A. "is not by itself sufficient" to pierce the corporate veil, "it is certainly not irrelevant."

---

[7] Instead, Geoplast S.p.A. argues that Geoplast U.S.'s contacts with the District are irrelevant under the District's long-arm statute because IMARK's claims do not arise out of any of Geoplast U.S.'s acts or omissions. *See* Def.'s Reply at 2-3. The Court shall address this argument below in the context of whether this Court has personal jurisdiction over Geoplast S.p.A.

*Valley Fin.*, 629 F.2d at 172.  In fact, because Geoplast S.p.A. completely owns Geoplast U.S.,

"there is an increased justification, all other things equal, to disregard the corporate entity." *See*

*Labadie Coal*, 672 F.2d at 97.

Second, IMARK lists a variety of facts to essentially argue that Geoplast S.p.A.

represents to the public that Geoplast U.S. is its U.S. branch.  IMARK avers that Geoplast S.p.A.

accomplishes this by, *inter alia*, the two entities having "a unified, consistent marketing image to

potential customers," using identical logos, and sharing identical, albeit translated, website

content.  Pl.'s Opp'n at 8-9.  Under quite similar facts, this Court previously declined to find two

entities alter egos based in part on their "joint use of trademarks[] and a common marketing

image" and shared internet home page, reasoning that "joint promotion *without more* does not

mandate the finding that a subsidiary is a mere shell for its parent corporation." *Diamond Chem.*,

268 F. Supp. 2d at 8-9 (emphasis added).  Accordingly, while IMARK's allegations regarding

Geoplast S.p.A. and Geoplast U.S.'s joint promotion and similar websites do not independently

render the entities alter egos, these facts are nonetheless relevant to the current inquiry.

Third, Mr. Pegoraro, Geoplast S.p.A.'s managing director, is Geoplast U.S.'s president

and sole director.  Pl.'s Opp'n at 8; Raugi Decl. ¶¶ 16-20; Pegoraro Decl. ¶ 2; *see also* Raugi

Decl., Ex. B (Statement of Geoplast U.S.'s Sole Incorporator).  The Supreme Court has

recognized that "it is entirely appropriate for directors of a parent corporation to serve as

directors of its subsidiary, and that fact *alone* may not serve to expose the parent corporation to

liability for its subsidiary acts." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Am.*

*Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988)) (emphasis added).  Nonetheless,

common directors between a parent and subsidiary are indicative of a unity of interest and

ownership. For example, in *Johnson-Tanner v. First Cash Financial Services*, Judge Paul L.

Friedman found that the fact that two entities shared "three key common officers and directors"

was "indicative of common corporate ownership and control." 239 F. Supp. 2d 34, 39 (D.D.C.

2003). In this case, more than just common corporate ownership exists. Geoplast S.p.A. has

*complete* control over Geoplast U.S., as Geoplast U.S.'s president and only director—Mr.

Pegoraro—is also Geoplast S.p.A.'s managing director. Raugi Decl. ¶¶ 16-20; Pegoraro Decl.

¶ 2.

Finally, Geoplast U.S. does not maintain a bank account and Geoplast S.p.A. pays

Geoplast U.S.'s expenses, including the legal costs of Geoplast U.S.'s incorporation. *See* Pl.'s

Opp'n at 8; Raugi Decl. ¶¶ 12-14, 25.[8] Failure to distinguish between Geoplast S.p.A.'s and

Geoplast U.S.'s finances amounts to a commingling of funds that evidences a unity of interest

and control between the two entities. *See, e.g.*, *Hazard II*, 90 F. Supp. 2d at 24-25 (finding a

"unity of financial transactions" between two corporations when one corporation paid the

ordinary business expenses of the other, including legal fees). The record provides no indication

that Geoplast S.p.A. paid these expenses pursuant to a loan or some other agreement with

Geoplast U.S. Accordingly, the record before this Court indicates that Geoplast U.S. is

completely dependent upon Geoplast S.p.A. for its financing; thereby providing additional

evidence that Geoplast U.S. did not have a corporate identity separate from Geoplast S.p.A.

After considering the cumulative weight of the aforementioned facts, the Court concludes

the Geoplast S.p.A. exercised "active and substantial" control over Geoplast U.S., so as to negate

---

[8] Although Geoplast U.S. was incorporated on March 4, 2009, Raugi Decl. ¶ 15, Mr.
Pegoraro did not request a separate bank account to be created for Geoplast U.S. until January
2010, *id.* ¶ 35. A separate bank account was never opened. *Id.* ¶ 35.

Geoplast U.S.'s separate personality. *Material Supply Int'l*, 62 F. Supp. 2d at 20 (quoting *Valley Fin., Inc.*, 629 F.2d at 172). The record indicates that Geoplast U.S. was completely owned, governed, and financed by Geoplast S.p.A., and consequently that the two entities share a common interest and ownership. Accordingly, the Court concludes that IMARK has alleged sufficient facts to satisfy the first prong of the *Labadie Coal* test.

b.      Inequitable Result

The second prong of the *Labadie Coal* test determines "whether there would be some element of injustice or fundamental unfairness if the Court were to find that [Geoplast S.p.A.] and [Geoplast U.S.] are not alter egos." *Hazard II*, 90 F. Supp. 2d at 26. Although undercapitalization, fraud, or willfully wronging a party are examples of unfairness, "[t]he essence of the fairness test is simply that an individual businessman cannot hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell." *Labadie Coal*, 672 F.2d at 100. In this case, the Court concludes that because Geoplast U.S. existed separate from Geoplast S.p.A. in name only, fairness dictates that this Court recognize that they are alter egos. *See Johnson-Tanner*, 239 F. Supp. 2d at 38 (finding that it would be an injustice not to recognize the parent and subsidiary corporation as alter egos when "[i]t is evident from the record that there is a unity of interest between the two entities"). As evidenced by the portrayal of Geoplast U.S., along with Geoplast S.p.A., as part of "Geoplast International," *see, e.g.*, Marcenaro Decl., Ex. C (Tank Elevator and Modulo System Brochures), at 8, 22, Geoplast S.p.A. created Geoplast U.S. under the guise of being a separate corporate entity, but with the intention of merely opening a North American office for Geoplast S.p.A. After failing to operate Geoplast U.S. as a separate corporate entity, it would be inequitable for this Court to grant Geoplast S.p.A.

15

the benefit of recognizing a distinction between it and Geoplast U.S. *Cf. Labadie Coal*, 672 F.2d at 97 ("In a sense, faithfulness to [corporate] formalities is the price paid for the corporate fiction, a relatively small price to pay for limited liability.").

In conclusion, for the aforementioned reasons, the Court concludes that IMARK has presented sufficient facts for the Court to conclude that Geoplast U.S. and Geoplast S.p.A. are alter egos. Consequently, in the jurisdictional inquiry that follows, the Court shall consider both Geoplast U.S.'s and Geoplast S.p.A.'s contacts with the District.

2.  The Court Has Personal Jurisdiction over Geoplast S.p.A. under the District of Columbia's Long-Arm Statute

This case arises under the Court's diversity jurisdiction. *See* Compl. ¶ 3 (asserting jurisdiction under 28 U.S.C. § 1332). Accordingly, whether the Court has personal jurisdiction over Geoplast S.p.A. is a function of District of Columbia law. *Crane*, 814 F.2d at 762. Because IMARK does not allege that Geoplast is a resident of the District, *see* Compl. ¶ 2, District of Columbia law permits this Court to exercise personal jurisdiction over Geoplast S.p.A. only pursuant to either D.C. Code §§ 13-334 or 13-423. Pursuant to D.C. Code § 13-334(a), the Court may "exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is 'doing business' in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510 (D.C. Cir. 2002) (quoting D.C. Code § 13-334(a)). Pursuant to D.C. Code § 13-423, in contrast, the Court is permitted to exercise specific personal jurisdiction over a foreign corporation if the plaintiff's "claim for relief [arose] from acts enumerated in any subsection of 13-423 . . . ." *Trerotola v. Cotter*, 601 A.2d 60, 64 (D.C. 1991). IMARK has only alleged that this Court has specific personal jurisdiction over Geoplast pursuant to D.C. Code § 13-423—the District's long-arm statute. Compl. ¶ 3; Pl.'s

Opp'n at 9 ("Geoplast S.p.A. has engaged in conduct covered by the District of Columbia's long arm statute").[9]  For the District's long-arm statute to confer personal jurisdiction over Geoplast S.p.A., IMARK must plead facts sufficient to satisfy (1) the long-arm statute; and (2) the constitutional requirements of due process.  *See* Fed. R. Civ. P. 4(k)(1)(A); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  The long-arm statute provides in pertinent part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's-
>
> > (1) transacting any business in the District of Columbia;
> >
> > . . .
> >
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> >
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> >
> > . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423.

In this case, IMARK argues that the long-arm statute confers personal jurisdiction over Geoplast S.p.A. for its tortious interference claim (Count IV) under either section 13-423(a)(3) or (a)(4).  Pl.'s Opp'n at 11-13.  In regard to IMARK's remaining claims (Counts I-III), IMARK

---

[9] IMARK does not reference either general personal jurisdiction or D.C. Code § 13-334 in its Complaint or opposition.  *See generally* Compl.; Pl.'s Opp'n.

does not cite a specific subsection of the long-arm statute that allegedly confers personal jurisdiction. Instead, IMARK argues that Geoplast S.p.A. "holds itself out as transacting business in the District of Columbia through its wholly-owned subsidiary," Pl.'s Opp'n at 6, such that "Geoplast S.p.A. has engaged in conduct covered by the District of Columbia's long arm statute," *id.* at 9. The Court construes this argument as asserting personal jurisdiction under D.C. Code § 13-423(a)(1) for "transacting any business in the District of Columbia."[10] Geoplast S.p.A. denies the existence of personal jurisdiction for any of IMARK's claim. Def.'s Mot. at 5-11. For the reasons set forth below, the Court concludes that it has personal jurisdiction over Geoplast S.p.A. under subsection (a)(1) of the long-arm for Counts I-III and under subsection (a)(4) for Count IV.

        a.     The Court Has Specific Personal Jurisdiction over Geoplast S.p.A. for Counts I-III Pursuant to D.C. Code § 13-423(a)(1)

        i.     Transacting business – D.C. Code § 13-423(a)(1).

An "expansive interpretation" has been given to D.C. Code § 13-423(a)(1), such that its reach is "coextensive with the due process clause" of the United States Constitution. *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (internal quotation marks omitted). Consequently, under subsection (a)(1) "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry . . . ." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). In this single inquiry, courts must examine whether the defendant

---

[10] The Court reiterates that IMARK has only alleged personal jurisdiction under the long-arm statute, D.C. Code § 13-423. *See, e.g.*, Compl. ¶ 3; Pl.'s Opp'n at 9 ("Geoplast S.p.A. has engaged in conduct covered by the District of Columbia's long arm statute"). Therefore, the Court does not construe IMARK's argument as asserting general personal jurisdiction under D.C. Code § 13-334(a) because Geoplast S.p.A. "is 'doing business' in the District." *Gorman*, 293 F.3d at 510.

"has purposefully availed itself of the benefits and protections of the District in engaging in a business activity in the forum jurisdiction," and whether "it is fair and reasonable to expect it to anticipate being sued in that jurisdiction." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (en banc). There are no "mechanical tests" or "talismanic formulas" used by courts to determine whether the assertion of personal jurisdiction is appropriate in a particular case. *Id.*; *see also id.* at 331 ("Even a small amount of in-jurisdiction business activity is generally enough.").

"[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal quotation marks and citation omitted). However, an out-of-state resident must do more than simply enter into a contract with a resident of the District to have minimum contacts with the District; the contract must have a " 'substantial connection' with the forum." *Helmer*, 393 F.3d at 206 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). "[A] contract is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction,' " therefore "a court must evaluate the 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts within the forum.' " *Id.* (quoting *Burger King*, 471 U.S. at 479).

In this case, Geoplast S.p.A. purposefully established minimum contacts with the District such that it is reasonable for it to anticipate being subject to suit in a District of Columbia court. First and foremost, Geoplast S.p.A. registered its wholly-owned subsidiary, and alter ego,

Geoplast U.S. with the DCRA so Geoplast U.S. could conduct business within the District. Raugi Decl. ¶ 24; *see also id.*, Ex. E (DCRA Application). Geoplast U.S.'s registration with the DCRA is significant because it amounts to a deliberate, voluntary, and significant connection with the District. As the Supreme Court has explained, when a defendant "manifestly has availed himself of the privilege of conducting business [in the forum], and [] his activities are shielded by 'the benefits and protections' of the forum's laws[,] it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476. Accordingly, in exchange for the benefit and privilege of its alter ego Geoplast U.S. being able to conduct business in the District, it is reasonable for Geoplast S.p.A. to anticipate being subject to the jurisdiction of a District of Columbia court.[11]

IMARK also relies upon the following facts to establish that Geoplast S.p.A. transacted business in the District: (1) Geoplast S.p.A.'s monthly wire transfers to IMARK's bank account in the District; (2) Geoplast S.p.A.'s 127 emails to IMARK in the District during three month-span between March 2009 and July 2009; and (3) Geoplast S.p.A.'s numerous phone calls to IMARK's District of Columbia office. *See* Raugi Decl. ¶¶ 7-8, 34.[12] As Geoplast S.p.A.

---

[11] Geoplast S.p.A. does not contest that Geoplast U.S.'s contacts with the forum amount to "transacting business" in the District. *See* Def.'s Reply at 1-3. Rather, Geoplast S.p.A. argues that because Geoplast U.S.'s acts or omissions did not give rise to Counts I-III, Geoplast U.S.'s acts and omissions are irrelevant as to whether this Court has personal jurisdiction over Geoplast S.p.A. *See id.* at 1-2. The Court shall address the argument in Part III.A.2.a.ii regarding D.C. Code § 13-423(b)'s nexus requirement. *See infra* pp. 23-25.

[12] The parties disagree as to who initiated contract negotiations. Mr. Pegoraro declares that the parties were introduced "through a family connection." Pegrorao Decl. ¶ 3. Mr. Raugi, in contrast, asserts that "Geoplast[] S.p.A. approached IMARK in early 2009 regarding Geoplast[] S.p.A.'s desire to enter the United States market." Raugi Decl. ¶ 4. Although an out-of-state defendant may transact business in the District under D.C. Code § 13-423(a)(1) by soliciting a District resident to perform work within the District, *Mouzavires v. Baxter*, 434 A.2d 988, 996 (D.C. 1981), the Court does not rely on the disputed fact of who initiated contract

correctly notes, individually these aforementioned facts would likely not constitute transacting business in the District for purposes of subsection (a)(1). *See* Def.'s Reply at 4-5 (citing, *inter alia*, *Gibbons & Co., Inc. v. Roskamp Inst.*, No. 06-CV-720 (EGS), 2006 WL 2506646 (D.D.C. Aug. 28, 2006)). In *Gibbons*, for example, Judge Emmet G. Sullivan concluded that the defendant's transmission of fifty to seventy-five emails and seventy-five phone calls did "not constitute a deliberate and voluntary association with the District that rises to the level of transacting business within the District." 2006 WL 2506646 at *3. The cases cited by Geoplast S.p.A., however, do not persuade the Court to disregard Geoplast S.p.A.'s emails, phone calls, and wire transfers into the District. Significantly, IMARK does not rely upon these acts exclusively; rather, IMARK predominately relies upon the fact that Geoplast U.S. registered to do business in the District. It is the cumulative impact of IMARK's allegations that indicates Geoplast S.p.A. was transacting business in the District.

Nevertheless, Geoplast S.p.A. argues that its aforementioned phone calls and emails do not constitute transacting business in the District because these transmissions occurred between March 2009 and July 2009, and the Contract was allegedly breached between February and March 2010. *See* Def.'s Reply at 4 (citing *Roz Trading, Ltd. v. Zeromax Group, Inc.*, 517 F. Supp. 2d 377, 387 (D.D.C. 2007)). Contrary to Geoplast S.p.A.'s intimations, the portion of this Court's opinion in *Roz Trading* cited by Geoplast S.p.A. does not support evaluating the temporal proximity between Geoplast S.p.A.'s transmissions and the breach of the Contract. *See Roz Trading*, 517 F. Supp. 2d at 387. Rather, in *Roz Trading*, this Court rejected the plaintiffs' claims that the defendants transacted business in the District because the plaintiffs failed to allege

_____

negotiations in this case to resolve the jurisdictional inquiry.

that the defendants acted within the District. *See id.* ("[A]ll the allegations contained in the [complaint] related to events alleged to have taken place in Uzbekistan" and the complaint "simply fails to allege that *any* of the transfers or transactions relevant to [p]laintiffs' claims occurred in the District of Columbia."). Moreover, the numerous decisions regarding whether phone calls and emails amount to transacting business under D.C. Code § 13-423(a)(1) have analyzed these transmissions with regard to their quality, not their proximity to when the claim arose. *See, e.g.*, *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30, 39-41 (D.D.C. 2007) (finding defendant's "regular phone calls into the District" did not amount to transacting business), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008); *Gibbons*, 2006 WL 2506646 at *3 (concluding that defendant's fifty to seventy-five emails and seventy-five phone calls did not satisfy D.C. Code § 13-423(a)(1)); *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 521 (D.D.C. 1995) (finding defendant's approximately eleven fax and telephone communications to the District "limited" and did not constitute transacting business). Accordingly, the Court rejects Geoplast S.p.A.'s argument that IMARK may not rely upon Geoplast S.p.A.'s phone calls and emails because they occurred about a year before Geoplast S.p.A. allegedly breached the Contract.

Finally, the Court must also consider whether exercising personal jurisdiction over Geoplast S.p.A. for Counts I-III would offend "traditional notions of fair play and substantial justice" as required by the Constitution's guarantee of due process. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are no "mechanical tests" or "talismanic formulas" for determining whether the assertion of personal jurisdiction is appropriate in a particular case. *Moreno*, 746 A.2d at 329. Instead, the Court must consider whether Geoplast S.p.A.'s "conduct

and connection with the [District] are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Court concludes that it is reasonable for Geoplast S.p.A. to anticipate being subject to suit in a District of Columbia court. Geoplast S.p.A. not only registered a wholly-owned subsidiary and alter ego with the DCRA, it also engaged in numerous communications with IMARK, a District resident, in furtherance of the Contract. Additionally, Geoplast S.p.A. has not argued that being subject to suit in the District would subject it to a burden that would offend notions of "fair play and substantial justice" or that doing so would contravene the "judicial system's interest in obtaining the most efficient resolution of controversies." *See id.* at 292. Therefore, exercising personal jurisdiction over Geoplast S.p.A. for Counts I-III comports with notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. For the reasons set forth above, the Court concludes that IMARK has presented sufficient facts to establish that Geoplast S.p.A. has transacted business in the District within the meaning of D.C. Code § 13-423(a)(1).

ii.    Nexus requirement – D.C. Code § 13-423(b).

The Court now turns to Geoplast S.p.A.'s argument that Geoplast U.S.'s contact with the District do not satisfy D.C. Code § 13-423(b)'s nexus requirement because IMARK's claims do not pertain to "any alleged acts or omissions by Geoplast U.S." *See* Def.'s Reply at 1-3. The Court disagrees, because to accept Geoplast S.p.A.'s position would require this Court to impose a stricter nexus requirement than what District of Columbia law mandates.

The long-arm statute confers jurisdiction only over those claims "arising from acts enumerated" in the statute. D.C. Code § 13-423(b). In other words, D.C. Code § 13-423(b) requires a "nexus between the plaintiff's claim and the defendant's business activities in the

forum jurisdiction." *Moreno*, 746 A.2d at 332. This is not a particularly high threshold; the requirement is met when the claim has "a discernible relationship to the business transacted in the District." *Trerotola*, 601 A.2d at 64 (internal punctuation and citations omitted). A claim only fails to have a "discernable relationship" when it is " 'unrelated to the acts forming the basis for personal jurisdiction.' " *Id.* (quoting *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981)).

In *Shoppers Food Warehouse v. Moreno*, the District of Columbia Court of Appeals elaborated on the meaning of D.C. Code § 13-423(b)'s "arising from" language. *See* 746 A.2d at 332-36. After reviewing the nexus requirements from other jurisdictions' long-arm statutes, the court reaffirmed its prior decisions that interpreted "arising from" "flexibly and synonymously with 'relate to' or having a 'substantial connection with.' " *Id.* at 335. In reaching this conclusion, the *Moreno* court eschewed narrower nexus requirements adopted by other jurisdictions, including cause-in-fact or proximate cause standards. *See id.* at 333-36. The *Moreno* court then rejected an out-of-state defendant's argument that D.C. Code § 13-423(b) was not satisfied because there was no "inherent relationship" between its advertising in the District and the negligence claim of a District resident who slipped and fell in the defendant's Maryland store. *Id.* at 336. The *Moreno* court instead concluded that a "discernable relationship" existed between the claim and defendant's extensive advertising campaign because it was "reasonably foreseeable" that one induced by the advertisements to attend the defendant's store could then sue the defendant for negligence relating to the store's condition. *See id.*

In this case, Geoplast U.S.'s registration with the DCRA and existence in the District has a "discernable relationship" to Counts I-III—all relate to the Contract.[13] In fact, both the

_____

[13] Count I alleges that Geoplast S.p.A. breached the Contract. Compl. ¶¶ 31-34. Count II asserts that Geoplast S.p.A. unjustly received the benefit of IMARK's performance of its

Contract's terms and "contemplated future consequences" concern Geoplast U.S.'s creation and existence in the District. *Burger King Corp.*, 471 U.S. at 479. Geoplast S.p.A. entered into the Contract with IMARK because it was interested in "extend[ing] its international market to the USA." Compl., Ex. 2 (English Translation of the Contract), at 2. To effectuate this expansion strategy, the Contract provided that IMARK would assist Geoplast S.p.A. "in establishing [Geoplast U.S.], subsidiary of [Geoplast S.p.A.], in Washington [D.C.], with legal business addressed at IMARK headquarters." *Id.* Far from "random, fortuitous, or attenuated," *Burger King Corp.*, 471 U.S. at 475, Geoplast S.p.A.'s decision to register Geoplast U.S. with the DCRA was part of Geoplast S.p.A.'s calculated expansion strategy that was the subject of, and effectuated pursuant to, the Contract. Accordingly, Geoplast U.S.'s contacts with the District bear a "discernable relationship" with Counts I-III, as it is then "reasonably foreseeable" that IMARK could sue Geoplast S.p.A. in the District if Geoplast S.p.A. breached its obligations under the Contract.

For the foregoing reasons, the Court finds that Geoplast S.p.A. purposefully availed itself of the privilege of conducting business in the District through registering its alter ego with the DCRA and transmitting emails, phone calls, and payments to IMARK's principal place of business in the District. These minimum contacts are sufficient to confer personal jurisdiction over Geoplast S.p.A. for Counts I-III pursuant to D.C. Code §§ 13-423(a)(1) and (b).

---

contractual obligations without compensation. *Id.* ¶¶ 35-40. Count III avers that IMARK invested time and money in meeting its contractual obligations, and therefore is entitled to compensation based on a *quantum meruit* theory.

b.      Tortious Interference Claim (Count IV)

In regard to its remaining claim for tortious interference (Count IV), IMARK alleges that personal jurisdiction exists under either D.C. Code §§ 13-423(a)(3) or, alternatively, (a)(4). *See* Pl.'s Opp'n at 12. Subsection (a)(3) confers personal jurisdiction if Geoplast S.p.A. "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia." In comparison, subsection (a)(4) grants personal jurisdiction if Geoplast S.p.A. "caus[ed] tortious injury in the District of Columbia by an act or omission outside the District of Columbia" and Geoplast S.p.A. also "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." For purposes of D.C. Code §§ 13-423(a)(3) and (a)(4), the act at issue "is the act of the alleged tortfeasor," the situs of which is unaltered by whether "other third party acts were necessary to consummate the tort, or that the injury itself took place in the District." *See Margolas v. Johns*, 483 F.2d 1212, 1218 (D.C. Cir. 1973).

In this case, IMARK alleges that Geoplast S.p.A. tortiously interfered with its business by both attempting to hire IMARK's employees and directly soliciting sales from IMARK's business opportunities. *See* Compl. ¶¶ 20-24, 49. As IMARK's principal place of business is located in the District, *id.* ¶ 2, the Court concludes that IMARK has alleged sufficient facts to reasonably infer that the injury it suffered as a result of Geoplast S.p.A.'s allegedly tortious interference occurred in the District. However, where Geoplast S.p.A.'s acts constituting tortious interference occurred is more difficult to resolve, as IMARK has not alleged where Geoplast S.p.A. committed such acts. *See* Def.'s Mot. at 10. Instead, IMARK argues that its factual allegations: (1) provide a "reasonable inference" that Geoplast S.p.A. tortious interference "*may*

have occurred within the District;" or, alternatively, (2) they indicate that act occurred outside of the District. *See* Pl.'s Opp'n at 12 (emphasis added). For the reasons set forth below, the Court concludes that IMARK has alleged sufficient facts to confer personal jurisdiction under subsection (a)(4), but not under subsection (a)(3).

i. IMARK has not alleged sufficient facts to confer jurisdiction under (a)(3).

IMARK correctly notes that it may rely on any reasonable inferences from its allegations to defend Geoplast S.p.A.'s motion to dismiss for lack of personal jurisdiction. *See, e.g.*, *GTE New Media Servs., Inc.*, 21 F. Supp. 2d at 36. IMARK's allegations, however, do not warrant the inference that Geoplast S.p.A. committed an act within the District that gave rise to IMARK's tortious interference claim. Significantly, IMARK alleges only in the most general of terms how Geoplast S.p.A. tortiously interfered with its business relationships: Geoplast S.p.A. "caus[ed] IMARK's employees to cease working for IMARK and commence work for Geoplast [S.p.A.], and contract[ed] directly with business contacts and opportunities identified by IMARK." Compl. ¶ 49. Additionally, IMARK does not allege that Geoplast S.p.A. tortiously interfered with IMARK's business relationships through its subsidiary, Geoplast U.S. *See* Compl. ¶¶ 2, 18-24, 46-51; Pl.'s Opp'n at 11-13. Considering two of Geoplast U.S.'s three officers were also IMARK's president and vice-president—Mr. Raugi, and Ms. Marcenaro, respectively—the Court cannot reasonably infer from IMARK's allegations that Geoplast U.S. tortiously interfered with IMARK's employees. *See* Marcenaro Decl. ¶ 3; Raugi Decl. ¶ 2; Raugi Decl., Ex. E (DCRA Application) (listing Geoplast U.S.'s officers).

Consequently, the only possible tortfeasor, based on IMARK's allegations, is Geoplast S.p.A., headquartered in Padova, Italy. Compl. ¶ 2. Both parties agree that Geoplast S.p.A.'s

contact with IMARK in the District was accomplished exclusively through phone calls and emails. *See* Pegoraro Aff. ¶ 8; Raugi Decl. ¶ 8. Therefore, based on the current state of the record, the only reasonable inference from IMARK's allegations is that Geoplast S.p.A. acted from Italy, and not from within the District, in such a way as to give rise to a claim for tortious interference.

Such out-of-forum actions, however, do not satisfy D.C. Code § 13-423(a)(3). For purposes of personal jurisdiction, where Geoplast S.p.A.'s acts occurred are uninfluenced by whether "other third party acts were necessary to consummate the tort, or that the injury itself took place in the District." *See Margolas*, 483 F.2d at 1218. For example, the D.C. Circuit has repeatedly rejected the notion that a defendant may "project[] her presence" into the District through phone calls originating outside of the District, so as to have committed the "act" of defamation within the District. *See Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 220 (D.C. Cir. 1986) (quoting *Margolas*, 483 F.2d at 1217-18). Similarly, an out-of-state manufacturer who creates a defective product, which is then shipped into the District and subsequently injures a plaintiff in the District, "acted" outside the District. *See Margolas*, 483 F.2d at 1217 & 1217 n.9. Although the act of defective manufacturing only becomes tortious once its causes injury in the District, the drafters of the District's long-arm statute purposefully defined the dispositive term "act" without regard to the act's resulting injuries. *See id.*

Neither party has argued that the Court should deviate from the aforementioned principles in this case because IMARK has asserted a claim for tortious interference. Accordingly, in light of the foregoing, the Court concludes that subsection (a)(3) does not confer jurisdiction over IMARK's tortious interference claim because IMARK has not alleged sufficient facts to

reasonably infer that either Geoplast S.p.A. or Geoplast U.S. committed a specific act within the District that would constitute tortious interference.

ii.    IMARK has alleged sufficient facts to confer jurisdiction under (a)(4).

Nevertheless, for the aforementioned reasons, the Court also concludes that IMARK has alleged sufficient facts to reasonably infer that Geoplast S.p.A. committed the act of tortious interference outside of the District. The Court now turns to whether Geoplast S.p.A. "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4).

IMARK relies exclusively on Geoplast U.S.'s contacts with the District to argue that Geoplast S.p.A. regularly does and solicits business in the District through Geoplast U.S. and engages in a persistent course of conduct in the District when it registered Geoplast U.S. with the DCRA. *See* Pl.'s Opp'n at 12.[14] Geoplast S.p.A. counters that IMARK cannot rely upon Geoplast U.S. to establish that it regularly does and solicits business in the District or engages in a persistent course of conduct because Geoplast U.S. is no longer an active entity, and was not active during the time relevant to the Complaint—February and March 2010. Def.'s Reply at 6-7. In support of this proposition, Geoplast S.p.A. once again cites to this Court's opinion in *Roz Trading*. *See* Def.'s Reply at 7. For the reasons set forth below, the Court rejects Geoplast S.p.A.'s argument and finds that Geoplast U.S.'s contacts with the District satisfy subsection (a)(4).

_____

[14] IMARK does not allege that Geoplast S.p.A. "derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4); *see* Pl.'s Opp'n at 12.

First, Geoplast S.p.A.'s reliance on *Roz Trading* is unpersuasive because Geoplast S.p.A. cites to the case's discussion of *general* personal jurisdiction under D.C. Code § 13-334(a). *See* Def.'s Reply at 7 (citing *Roz Trading*, 517 F. Supp. 2d at 385-86). In the portion of *Roz Trading* cited by Geoplast S.p.A., this Court concluded that it did not have general personal jurisdiction over an out-of-state parent company on account of its subsidiary "doing business" in the District, when the subsidiary dissolved almost a year before the complaint was filed. *See* 517 F. Supp. 2d at 384-86. While it makes sense to analyze the temporal proximity of a defendant's contacts with the District in the context of D.C. Code § 13-334(a) because the defendant's contacts must be "*continuous* and systematic," *see D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008) (emphasis added), Geoplast S.p.A. has presented no legal authority or rationale that supports doing the same for specific personal jurisdiction under D.C. Code § 13-423(a)(4).[15]

Second, there is no apparent justification in doing so, as general personal jurisdiction's "doing business" requirement and specific personal jurisdiction's "persistent course of conduct" requirement are "discrete constructs." *See Crane*, 814 F.2d at 763. The so-called "plus factors" listed in subsection (a)(4) "serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Id.*; *see also Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 763 (D.C. 2009) (noting that the plus factors provide "an additional due process safeguard . . . to ensure that the party being haled into this jurisdiction's courts has more than a 'scant' connection to the forum"). Consequently, the plus

_____

[15] In addition, Geoplast U.S. is distinguishable from the subsidiary in *Roz Trading*. While the subsidiary in *Roz Trading* filed its certification of dissolution with its state of incorporation prior to the filing of the complaint, the record in this case does not indicate that Geoplast U.S. has similarly filed for dissolution or has otherwise been dissolved. *See* 517 F. Supp. 2d at 380. Accordingly, Geoplast S.p.A.'s attempt to equate Geoplast U.S. with the subsidiary in *Roz Trading* is also unpersuasive.

factors are "satisfied by connections considerably less substantial than those it takes to establish general, all-purpose 'doing business'– or 'presence'–based jurisdiction." *See Crane*, 814 F.2d at 763.[16] In fact, a tort claim need not even arise from acts enumerated in subsection (a)(4)'s plus factors. *Id.*; *Radice*, 982 A.2d at 763. In light of the plus factors' limited purpose, there is no apparent justification for also imposing a temporal proximity requirement between IMARK's tortious interference claim and Geoplast U.S.'s acts.

Finally, this Court, sitting in diversity, must apply the District's law regarding its long-arm statute as presently situated and may not impose novel requirements. *See Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 424 (D.C. Cir. 1988) ("Absent some authoritative signal from the legislature or the [state courts], we see no basis for even considering the pros and cons of innovative theories. . . . We must apply the law of the forum as we infer it presently to be, not as it might come to be." (quoting *Dayton v. Peck, Stow & Wilcox Co.*, 739 F. 2d 690, 694-95 (1st Cir. 1984))). Geoplast S.p.A. has presented no authority, and the Court is aware of none, that supports imposing a temporal proximity requirement between D.C. Code § 13-423(a)(4)'s plus factors and a plaintiff's tort claim. In conclusion, for the reasons stated above, the Court rejects Geoplast S.p.A.'s argument that Geoplast U.S.'s activities in the District may not be considered when determining whether Geoplast S.p.A.'s contacts with the District satisfy subsection (a)(4)'s plus factors.

After considering the totality of Geoplast S.p.A.'s contacts with the District, the Court concludes that Geoplast S.p.A. engaged in a persistent course of conduct with the District that

---

[16] General jurisdiction, in comparison, is "a high bar" that requires that a defendant maintain "continuous and systematic" contacts with the forum. *D'Onofrio*, 534 F. Supp. 2d at 90 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)).

was neither scant nor fortuitous. Geoplast U.S. voluntarily registered with the DCRA so it could conduct business within the District, thereby purposefully availing itself of the benefits and privileges of District of Columbia law. *See* Raugi Decl. ¶ 24; *id.*, Ex. E (DCRA Application). Therefore, Geoplast S.p.A. is amenable to suit under D.C. Code § 13-423(a)(4).

This is not the end of the inquiry, however, as the Court must also consider whether exercising personal jurisdiction over Geoplast S.p.A. would offend "traditional notions of fair play and substantial justice" as required by the Constitution's guarantee of due process. *Int'l Shoe Co.*, 326 U.S. at 316. There are no "mechanical tests" or "talismanic formulas" for determining whether the assertion of personal jurisdiction is appropriate in a particular case. *Moreno*, 746 A.2d at 329. Instead, the Court must consider whether Geoplast S.p.A.'s "conduct and connection with the [District] are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

As the Court has previously stated, Geoplast S.p.A.'s act of registering Geoplast U.S., its wholly-owned subsidiary and alter ego, with the DCRA so Geoplast U.S. could conduct business in the District renders it reasonable for Geoplast S.p.A. to anticipate being subject to suit in a District of Columbia court. *See supra* pp. 22-23. This conclusion is further supported by the fact that Geoplast S.p.A. directed its allegedly tortious conduct towards IMARK, a resident of the District. *See Calder v. Jones*, 465 U.S. 783, 789-91 (1984) (holding that a California court could exercise jurisdiction over the nonresident author and editor of a defamatory article whose alleged wrongdoing was "intentionally directed at a California resident"). Finally, Geoplast S.p.A. has not claimed that being subject to suit in a District of Columbia court would subject it to a burden that would offend notions of "fair play and substantial justice" or that doing so would contravene

the "judicial system's interest in obtaining the most efficient resolution of controversies." *World-Wide Volkswagen*, 444 U.S. at 292.

Instead, Geoplast S.p.A. argues that exercising personal jurisdiction over it would violate "due process considerations" for two reasons. *See* Def.'s Reply at 7. First, Geoplast S.p.A. argues that IMARK may not rely upon Geoplast U.S.'s acts because Geoplast U.S. is not mentioned in the Complaint. *Id.* IMARK, however, is not limited to the Complaint's allegations in a motion to dismiss for lack of personal jurisdiction, as it may also rely upon " 'affidavits and other written materials as [it] can otherwise obtain.' " *FINCON Servs.*, 681 F. Supp. 2d at 44 (quoting *Mwani*, 417 F.3d at 7). Second, Geoplast S.p.A. argues that it and Geoplast U.S. are separate entities and that Geoplast U.S. is not named as a defendant in this case. *See* Def.'s Reply at 7. The Court also rejects this argument because, as Geoplast S.p.A. and Geoplast U.S. are alter egos, distinguishing between the entities is meaningless—they are one and the same. Therefore, the Court concludes that exercising personal jurisdiction over Geoplast S.p.A. would comport with due process considerations of fair play and substantial justice.

In conclusion, the Court finds for the aforementioned reasons that D.C. Code § 13-423(a)(4) confers jurisdiction over IMARK's tortious interference claim (Count IV) and D.C. Code § 13-423(a)(1) confers jurisdiction over IMARK's remaining claims (Counts I-III). Accordingly, the Court shall deny Geoplast S.p.A.'s motion to dismiss IMARK's claims for lack of personal jurisdiction.[17]

### B.    *Motion to Dismiss For Failure to State a Claim*

The Court now turns to Geoplast S.p.A.'s motion to dismiss IMARK's tortious

---

[17] Accordingly, the Court shall deny as moot IMARK's motion for jurisdictional discovery. Pl.'s Opp'n at 13.

interference claim (Count IV) for failure to state a claim.[18]  Under District of Columbia law, there are two types of tortious interference claims: tortious interference with a contract and tortious interference with a prospective advantageous business transaction (hereinafter, "tortious interference with a prospective transaction").  *See Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 56 (D.D.C. 2010).  To assert a tortious interference with a contract claim, a plaintiff must allege: " '(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach.' " *See Casco Marina Dev., L.L.C. v. D.C. Redev. Land Agency*, 834 A.2d 77, 83 (D.C. 2003) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000) (footnote and citation omitted)).  In addition, the tortfeasor must be a third party to the contract, as a party cannot tortiously interfere with its own contract.  *See, e.g.*, *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989).  A claim for tortious interference with a prospective transaction, in comparison, resembles a tortious interference with a contract claim, "except that the plaintiff must demonstrate the existence, knowledge, and intentional procurement of a breach of a prospective advantageous business transaction instead of meeting those elements as to a contract." *Teltschik*, 683 F. Supp. 2d at 56 (citing *Casco*, 834 A.2d at 84).

In this case, Geoplast S.p.A. argues that IMARK's tortious interference claim (Count IV) is insufficient because it fails to provide adequate notice of the basis for IMARK's claim and fails to state a claim for which relief may be granted.  *See* Def.'s Mot. at 11.  In response,

---

[18] The Court may not consider matters outside the pleadings in a motion to dismiss for failure to state a claim without converting it to a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).  The Court declines to do so here and therefore shall not consider the various exhibits and declarations attached to the parties' filings when evaluating Geoplast S.p.A.'s motion to dismiss for failure to state a claim.

IMARK advances two theories for how it has stated a claim for tortious interference: Geoplast S.p.A. tortiously interfered with (1) "IMARK's contractual relationship with its employees;" and (2) "IMARK's business relationship with companies IMARK developed business relationships with." Pl.'s Opp'n at 14. For the reasons set forth below, the Court concludes that IMARK has failed to state a claim for tortious interference based on either theory.

1. IMARK Has Failed to State a Claim that Geoplast S.p.A. Tortiously Interfered with Its Contracts with "Key Personnel"

IMARK argues that it has alleged a claim against Geoplast S.p.A. for tortious interference with IMARK's contractual relationships with its "key personnel." *See* Pl.'s Opp'n at 14.[19] Geoplast S.p.A., in contrast, argues, *inter alia*, that IMARK has failed to plead the nature of its relationship with these employees and this omission "precludes the possibility of any relief being granted." *See* Def.'s Mot. at 13-14. For the reasons set forth below, the Court agrees with Geoplast S.p.A. that IMARK's failure to allege the existence of a contract with its "key personnel" is fatal to this tortious interference theory.

The Complaint does not allege that a contract existed between IMARK and the "key personnel" that Geoplast S.p.A. allegedly interfered with and attempted to hire. *See generally* Compl. As Geoplast S.p.A. correctly notes, Def.'s Reply at 8, under District of Columbia law there is a presumption that, absent a "clear expression of an intent to enter into a contract for a fixed period," the employer and employee "have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party," *Bible Way Church v.*

---

[19] IMARK does not argue that Geoplast S.p.A.'s alleged attempts to hire IMARK's "key personnel" constitute a claim for tortious interference with a prospective transaction. *See* Pl.'s Opp'n at 14. Accordingly, the Court shall only analyze whether IMARK's allegations constitute a claim for tortious interference with a contract.

*Beards*, 680 A.2d 419, 432-33 (D.C. 1996) (quoting *Sullivan v. Heritage Found.*, 399 A.2d 856, 860 (D.C. 1979)) (internal quotation marks omitted); *see also McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000) ("It is clear that, as an at-will employee, appellant did not have a contractual employment relationship she could use as the basis for a suit for tortious interference with a contractual relationship."). Without an allegation that the "key personnel" had a contract with IMARK, IMARK has failed to overcome this presumption. *See Bible Way Church*, 680 A.2d at 433 (affirming trial court's dismissal of the plaintiff's tortious interference with a contract claim because the plaintiff failed to allege the existence of a contract in the complaint so as to rebut the presumption of at-will employment). Accordingly, contrary to IMARK's claims, the Court cannot reasonably infer from the Complaint's allegations that a contract existed between IMARK and its employees. Pl.'s Opp'n at 14. Therefore, the Court shall dismiss Count IV to the extent it states a tortious interference with a contract claim. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 72-73 (D.D.C. 2005) (dismissing plaintiff's tortious interference with a contract claim for failure to state a claim in part because the claim was based on at-will employment); *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 22-24 (D.D.C. 2002) (dismissing plaintiff's tortious interference with a contract claim because the plaintiff's "status as an at-will employee precludes relief").[20]

2.     IMARK Has Failed to State a Claim that Geoplast S.p.A. Tortiously Interfered with Its Business Relationships

IMARK's second theory, tortious interference with IMARK's business relationships, fares no better. Notably, unlike its claim for tortious interference with a contract, IMARK does

---

[20] As the Court dismisses IMARK's tortious interference with a contract claim for failure to allege the existence of a contract, the Court does not reach Geoplast S.p.A.'s other arguments regarding this claim's infirmities. *See* Def.'s Mot. at 13-14.

not indicate which of the Complaint's allegations support this theory. *See* Pl.'s Opp'n at 13-14.

Moreover, even when the Court construes the Complaint in IMARK's favor and grants IMARK

all reasonable inferences therefrom, the Court finds that only the following allegations could

arguably pertain to a claim for tortious interference with a business relationship:

(1) "Geoplast began directly soliciting sales from entities in the United States despite IMARK's exclusive right under the Contract to be the sole supplier of Geoplast goods." Compl. ¶ 23.

(2) "Included among those entities contacted by Geoplast were several businesses that IMARK had cultivated business relationships with related to the sale and purchase of Geoplast's goods." *Id.* ¶ 24.

(3) "Geoplast intentionally and willfully interfered with IMARK's business relationships related to the Contract, including but not limited to . . . contracting directly with business contacts and opportunities identified by IMARK." *Id.* ¶ 49.

These allegations, however, fail to state a tortious interference claim. IMARK has essentially

converted its breach of contract claim into a tortious interference claim, arguing that Geoplast

S.p.A.'s act of soliciting sales directly from businesses, rather than permitting IMARK to do so

on Geoplast S.p.A.'s behalf, breached IMARK's right under the Contract. However, even

assuming, *arguendo*, that Geoplast S.p.A. breached the Contract by directly contacting

businesses, Geoplast S.p.A. is not a third party to the Contract, and therefore cannot be held

liable under a tortious interference with a contract theory. *See Sorrells*, 565 A.2d at 290.

Furthermore, the nature of IMARK's relationships with these "several businesses," and

consequently which type of tortious interference claim IMARK is asserting, is unknown from the

Complaint. *See* Def.'s Reply at 9. To the extent IMARK alleges that Geoplast S.p.A. tortiously

interfered with IMARK's contracts with these businesses, IMARK has failed to state such a

claim because it failed to plead any facts that could lead this Court to reasonably infer that

IMARK had contracts with these businesses. *See supra* pp. 35-36. Specifically, although IMARK alleges that it "cultivated business relationships" with these "several businesses," Compl. ¶ 24, the Court cannot reasonably infer from such vague allegations that IMARK's relationships with these unnamed businesses were contractual.

Alternatively, to the extent IMARK alleges that Geoplast S.p.A. tortiously interfered with its prospective transactions with these unnamed businesses, this claim also fails to state a claim. *See Teltschik*, 683 F. Supp. 2d at 56 (listing elements for a claim of tortious interference with a prospective transaction). IMARK's allegation that it "cultivated business relationships" with businesses, Compl. ¶ 24, is devoid of any factual content that would allow this Court to reasonably infer that IMARK had prospective transactions with these businesses. Moreover, IMARK has not alleged that Geoplast S.p.A.'s alleged contact with these businesses hindered IMARK's prospective transactions, or that IMARK incurred damages as a result. *See generally id.* Therefore, the Court concludes that IMARK has also failed to state a claim for tortious interference with a prospective transaction.

In conclusion, for the aforementioned reasons, the Court concludes that IMARK has failed to state a claim for tortious interference predicated upon Geoplast S.p.A.'s attempts to either hire IMARK's presumptively at-will employees or contact businesses IMARK had also contacted. Accordingly, the Court shall grant Geoplast S.p.A.'s motion to dismiss IMARK's tortious interference claim (Count IV) for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court shall DENY Geoplast S.p.A.'s [10] Motion to

Dismiss IMARK's claims for lack of personal jurisdiction. The Court shall GRANT, however, Geoplast S.p.A.'s [10] Motion to Dismiss IMARK's tortious interference claim (Count IV) for failure to state a claim. An appropriate Order accompanies this Memorandum Opinion.

Date: December 6, 2010.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge